```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                   JACKSON DIVISION
```

**JOHN SLAGTER**                                               **APPELLANT**

                                        CIVIL ACTION NO. 3:05–CV–560BN

VS.                                              Consolidated with

                                                NO. 3:05–MC–26JCS

**STONECRAFT, LLC.**                                            **APPELLEE**


<u>**OPINION AND ORDER**</u>

This cause is before the Court on the following Motions:

1. Appellee's Motion to Dismiss Appeal, filed on February 28, 2006, under docket entry no. 36.

2. Appellant's Motion to Vacate Amended Judgment and Request for Remand or De Novo Review ("Motion to Vacate"), filed on March 15, 2006, under docket entry no. 41.

Having considered the Motions, Responses, Rebuttals and all attachments to each, as well as supporting and opposing authority, the Court finds as follows:

1. The Motion to Dismiss is well taken and should be granted.

2. The Motion to Vacate is not well taken and should be denied as moot.

   **I.   Factual Background and Procedural History**

This action is an appeal by Appellant John Slagter of a final order rendered by the United States Bankruptcy Court for the Southern District of Mississippi ("bankruptcy court") in Adversary Case No. 03-00173WDH ("Adversary Proceeding") on March 10, 2005 ("March 10 Order").  Through the Adversary Proceeding, Appellee Stonecraft, LLC.("Stonecraft") sought a determination of ownership of a patent that named Slagter as the inventor. In an Opinion entered contemporaneously with the March 10 Order, the Bankruptcy Court determined that Stonecraft was the rightful owner of the patent and ordered Slagter to transfer his rights in the patent to Stonecraft. Slagter now appeals that decision.

Stonecraft, organized in 1995 as a Michigan limited liability company, is a manager-operated LLC that was formed to develop, market and sell a flexible concrete tile using a fiber reinforced Portland cement technology.[1] Slagter, the promoter of the business venture, was named as manager of Stonecraft in its operating agreement. After encountering problems with the product Stonecraft originally sought to manufacturer, Slagter recommended an alternative polymer-cement composite that did not contain fiber. The members of Stonecraft authorized Slagter to test and evaluate the alternative method. The new composite proved to be a better product than the original product. A patent was subsequently

---

[1] Although its administrative office was located in Michigan, Stonecraft eventually opened its manufacturing facility in Sharkey County, Mississippi in 1999.

obtained for the polymer-cement composite, and Slagter was named as the inventor ("the Patent").

In June 2000, after the Patent had been registered, Slagter was terminated as the manager of Stonecraft. Slagter thereafter refused to assign the Patent over to Stonecraft and warned Stonecraft that it had no right to manufacture or sell the product embodied in the Patent. On October 17, 2000, Stonecraft filed suit against Slagter in the County Court of Kent County, Michigan, seeking an order compelling Slagter to assign his rights in the Patent to Stonecraft ("Michigan state court action").

Before the Michigan state court action could be adjudicated, Stonecraft filed a Chapter 11 bankruptcy petition on March 17, 2003, in the bankruptcy court ("Bankruptcy Action").[2] As a result of the Bankruptcy Action, the Michigan state court action was stayed. Upon approval of the bankruptcy court, Stonecraft also obtained post-petition financing from MK Leasing, LLC. ("MK Leasing") in return for a junior lien on all encumbered assets and a priority lien on all unencumbered assets of Stonecraft.[3]

Wishing to liquidate substantially all of its assets, Stonecraft initiated the Adversary Proceeding against Slagter in

---

[2] The Bankruptcy Action, docketed as case no. 03-05229, was originally filed in the United States Bankruptcy Court for the Northern District of Mississippi, but was later transferred to the Southern District of Mississippi.

[3] MK Leasing is an LLC formed by Stonecraft members Milton Keyers and Marvin Cooper.

August 2003 to determine ownership of the Patent. Stonecraft filed an amended complaint in the Adversary Proceedings in May 2004 after mediation between Stonecraft and Slagter failed. The Amended Complaint alleged that as manager, Slagter owed a fiduciary duty to Stonecraft and that Slagter breached that duty by claiming ownership of the patent. As relief, Stonecraft sought a declaratory judgment imposing a constructive trust and declaring that the Patent was property of the bankruptcy estate. Further, Stonecraft requested a turnover of all of Slagter's interest in the Patent pursuant to 11 U.S.C. § 542 and authority to sell the rights to the Patent pursuant to 11 U.S.C. §§ 363, 1123 and 1129. In Response, Slagter maintained that he was the rightful owner of the Patent because he had "invented" the polymer-cement composite prior to the creation of Stonecraft and therefore owed no fiduciary duty to the company with respect to the Patent. Slagter also filed a counterclaim against Stonecraft, alleging that its members had violated the operating agreement through unfair and oppressive conduct against Slagter. The counterclaim was eventually dismissed by the bankruptcy court, without prejudice.[4]

After a trial in the Adversary Proceeding in January 2005, the bankruptcy court, on March 10, 2005, rendered its Opinion and

---

[4] Contending that the Adversary Proceeding was not a "core-proceeding" and in light of the Michigan state court action, Slagter also moved the bankruptcy court to abstain pursuant to the mandatory abstention requirement of 28 U.S.C. § 1334(c)(2). The bankruptcy court however denied Slagter's request for abstention.

Order. The bankruptcy court determined that the patented product was not invented until after Stonecraft was formed, Slagter did in fact owe a fiduciary duty to Stonecraft in developing the technology, and that he held the Patent in trust for the benefit of Stonecraft. Slagter was also ordered to transfer his interest in the Patent to Stonecraft.

While the Adversary Proceeding was pending, Stonecraft filed an Amended Plan for Liquidation ("the Amended Plan") in the Bankruptcy Case which provided that all of Stonecraft's assets, including the Patent, were to be sold through auction. The Amended Plan stated however that any auction of assets should not occur until a "final order" was entered in the Adversary Proceeding. After a confirmation hearing, the bankruptcy court, on March 18, 2005, entered an order confirming the Amended Plan.

Before a final judgment was entered in the Adversary Proceeding, Slagter, on March 28, 2005, filed a motion to stay the March 10 Order in the Adversary Proceeding. On April 22, 2005, the bankruptcy court entered a final judgment in the Adversary Proceeding ( "April 22 Final Judgment") and also granted Slagter a stay pending appeal, conditioned on the posting of a $200,000.00 bond within ten days.[5]

---

[5] As discussed *infra*, the April 22 Final Judgment was later amended by the bankruptcy court on January 30, 2006.

5

Slagter was unable to post the $200,000.00 bond within the requisite time. Consequently, on May 17, 2005, the Patent was sold at an auction sale to MK Leasing for $600,000.00. Three days later, the auction sale was approved by the bankruptcy court ("Order Confirming Auction Sale") and on May 21, 2005, Stonecraft executed a bill of sale conveying the assets sold at the sale, including the Patent, to MK Leasing.[6] MK Leasing then sold all of the assets it purchased through the sale to PolyCem, LLC ("PolyCem").[7] Slagter moved for a stay of the Order Confirming Auction Sale, but that stay was denied by the bankruptcy court. Slagter also filed two stay motions in this court, seeking a stay of both the March 10 Order in the Adversary Proceeding and the Order Confirming Auction Sale in the Bankruptcy Action. United States Magistrate Judge James Sumner denied both motions.

In its April 22 Final Judgment, the bankruptcy court mistakenly stated that the transfer of the Patent should not occur until the judgment was "final and non-appealable." On December 19, 2005, this Court granted Stonecraft leave to petition the bankruptcy court to amend the April 22 Final Judgment. On January 30, 2006, the bankruptcy court did in fact enter an amended final judgment, which required Slagter to assign his rights in the Patent

---

[6] Slagter has also appealed the Order Confirming Auction Sale, and that appeal is currently pending in this Court as civil action no. 3:05-CV-628BS.

[7] PolyCem was formed by members of MK Leasing.

to Stonecraft within ten days ("Amended Final Judgment"). After Slagter failed to execute the Patent assignment, the clerk of the bankruptcy court executed an assignment on behalf of Slagter pursuant to Rule 70 of the Federal Rules of Civil Procedure. Stonecraft in turn assigned the Patent to MK Leasing. On February 15, 2006, after MK Leasing had paid the balance of the purchase price of the Patent, Stonecraft made a final distribution to its creditors in accordance with the Amended Plan.

Stonecraft now moves to dismiss the instant appeal. Slagter has also moved the Court to vacate the Amended Final Judgment of the bankruptcy court, on the grounds that the bankruptcy court lacked jurisdiction to render a final judgment. The Court will now consider these two Motions.

## II.   Analysis – Stonecraft's Motion to Dismiss

In moving to dismiss this appeal, Stonecraft urges that all factors of the equitable mootness doctrine weigh in favor of dismissal. Equitable mootness is a prudential concept that is unique to bankruptcy matters. In re Manges, 29 F.3d 1034, 1039 (5th Cir. 1994). Unlike Article III mootness, where the inquiry focuses on whether there is a live controversy, equitable mootness is appropriate where "there has been substantial consummation of [a] plan such that effective judicial relief is no longer available – even though there may still be a viable dispute between the parties on appeal." Id. ("[E]ven when the moving party is not entitled to

7

dismissal on Article III grounds, common sense or equitable considerations may justify a decision not to decide a case on the merits")(quotation marks and citation omitted). The doctrine is designed to protect non-parties who have relied on a reorganization plan that has gained approval of the bankruptcy court and that has been substantially implemented. Id.

In In re Manges, the United States Court of Appeals for the Fifth Circuit set forth the following factors by which a court should determine whether a bankruptcy appeal is equitably moot:

(1) whether a stay has been obtained,
(2) whether the plan has been "substantially consummated," and
(3) whether the relief requested would affect either the rights of the parties not before the court or the success of the plan.

Id. (citations omitted).

## II.A. Whether a Stay was Obtained

The first consideration of the Court is whether Slagter was able to obtain a stay that would prevent the consummation of Stonecraft's Amended Plan. The Court notes that whether a party fails to move for a stay or whether a stay is requested but denied is irrelevant. Id. at 1040; In re Berryman Products, Inc., 159 F.3d 941, 944-45 (5th Cir. 1998). As the Fifth Circuit has explained, "a stay not sought, and a stay sought and denied, lead equally to the implementation of the plan of reorganization." In re Manges, 29 F.3d at 1040 (citation omitted).

A stay of either the March 10 Order requiring Slagter to transfer his right in the Patent to Stonecraft or a stay of the Order Confirming Auction Sale would have prevented the implementation of the Amended Plan. Although Slagter successfully moved the bankruptcy court for a stay of the March 10 Order in the Adversary Proceeding, the stay was conditioned on a $200,000.00 bond which Slagter was unable to post. In addition, the bankruptcy court denied Slagter's request for a stay of the Order Confirming Auction Sale. Slagter was also unsuccessful in obtaining a stay of the two Orders in this court.

Slagter argues that the bankruptcy court should not have required him to post a bond because of the "hold harmless" provision of the Stonecraft operating agreement. The Court however is not persuaded that this provision works to bar an appeal bond requirement where, as here, the company is actually pursuing a legal action against its former manager. As Stonecraft points out, it would defy logic for an LLC manager to be held harmless under the circumstances.

The Court therefore finds that Slagter's inability to obtain a stay favors dismissal.

**II.B. Whether the Amended Plan Has Been Substantially Consummated**

The Court must next consider whether there has been substantial consummation of Stonecraft's Amended Plan. "Substantial consummation" is defined in the Bankruptcy Code as:

9

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

Stonecraft contends that the following sequence of events represents a substantial consummation of the Amended Plan:

1. The Bankruptcy Court entered Judgment in the Adversary Proceeding imposing a constructive trust upon the Patent.

2. The Bankruptcy Court granted Slagter a stay pending appeal conditioned upon the posting of a $200,000.00 bond, but Slagter failed to post the bond.

3. Stonecraft conducted the auction of all if its assets as required by the Amended Plan of Liquidation. The auction sale took place on May 17, 2005.

4. The Bankruptcy Court conducted a hearing on May 18, 2005 and confirmed the auction sale.

5. In June 2005, there being no stay of either the Final Judgment or the Order Approving the Auction Sale, Stonecraft executed a Bill of Sale conveying all of its assets, including, the Patent, to the Court approved purchaser at the sale, MK Leasing.

6. MK Leasing advanced a portion of the purchase price to Stonecraft in order to pay administrative expense claims, but withheld payment of the balance of the purchase price pending Stonecraft's receipt of an Assignment of the Patent.

7. On February 13, 2006, after having successfully defended numerous efforts by Slagter to obtain a stay pending appeal without posting a bond, Stonecraft obtained an Assignment of the Patent Rights and, on the next day, forwarded the

>           Assignment to the United States Patent and
>           Trademark office for recordation.
>
> 8.    On February 15, 2006, MK Leasing paid the balance
>       of the purchase price and Stonecraft made
>       distribution to the remaining administrative
>       expense claimants in Class I, and made payment
>       required by the Plan to Class II, III and VIII
>       creditors.
>
> 9.    On February 17, 2006, having received and
>       distributed the purchase money from the auction
>       sale, Stonecraft executed an Assignment of the
>       Patent to MK Leasing, LLC.

Appellee's Motion to Dismiss, unmarked pp. 12-13. Slagter does not dispute that these events have occurred and does not argue that the Amended Plan has not been substantially consummated. The Court therefore finds that in light of the above described events, the Amended Plan has been substantially consummated.

## II.C. Whether the Rights of Third Parties or the Success of the Amended Plan Would be Affected

Finally, the Court must consider whether a reversal of the March 10 Order would affect the rights of third parties not before the Court or would otherwise unravel the Amended Plan. Stonecraft urges that a reversal of the March 10 Order would affect the rights of its creditors and the success of the Amended Plan. The Court agrees. The Patent has now been sold and all rights in it have been assigned to MK Leasing. Also, the proceeds from the sale of the Patent have already been used to satisfy various administrative and other priority claims of creditors who are not before this Court. If the Court were to determine that Slagter is the rightful

owner of the Patent and void the assignment of the Patent, the proceeds from the Patent sale would have to be recouped from creditors and refunded to MK Leasing. There are no assurances that the creditors would be able to repay these funds. Moreover, PolyCem, relying on the unstayed Final Judgment, has altered its position by purchasing the Patent from MK Leasing and has, according to Stonecraft, invested a large amount of capital in preparing to manufacturer the polymer-cement composite.

The Court also believes the integrity of the Amended Plan would be severely undermined if the decision of the bankruptcy court in the Adversary Proceeding is overturned. A determination of ownership of the Patent was integral to the Amended Plan as the Patent appears to be the most valuable asset owned by Stonecraft. If the estate were now forced to refund the proceeds of the sale, the Amended Plan would undoubtedly fail.

Slagter does little to refute that the three factors of equitable mootness favor dismissal. Instead, Slagter argues that equitable mootness only applies to orders confirming a reorganization plan and therefore is not applicable to a final order in an adversary proceeding. Although equitable mootness has predominately been used to dismiss appeals of confirmation orders, courts have not limited the applicability of the doctrine to such orders. See e.g., In re Grimland, Inc., 243 F.3d 228, 231 (5th Cir. 2001) (analyzing equitable mootness factors in appeal of order

surcharging a creditor's collateral); In re Box Brothers Holding Co., 194 B.R. 32, 42 (D. Del. 1996) (dismissing as equitably moot appeal of order dismissing the complaint *in adversary proceeding*); In re Ormet Corp., No. 2:04-CV-1151; 2005 WL 2000704, *4-6 (S.D. Ohio Aug. 19, 2005) (finding appeal of order granting § 1133 relief equitably moot); In re Milk Palace Dairy, LLC., 327 B.R. 462, 467-68 (B.A.P. 10th Cir. 2005) (equitably mooting appeal of order allowing debtor to purchase and sell property). Faced with the same argument that Slagter has made in the instant case, the court in In re Ormet Corp. explained that equitable mootness applies to all orders that are "integral" to a debtor's plan. In re Ormet Corp., 2005 WL 2000704, at *6. Similarly, this Court is of the opinion that the March 10 Order of the bankruptcy court, which determined ownership of the Patent, was an order that was "integral" to the Amended Plan and is therefore subject to equitable mootness.

Accordingly, because all three considerations outlined in In re Manges favor dismissal, the Court concludes that this appeal should be dismissed as equitably moot.

### III. Slagter's Motion to Vacate

Because the Court has determined that this appeal should be dismissed under the equitable mootness doctrine, it need not reach the merits of Slagter's Motion to Vacate. The Court therefore denies the Motion to Vacate as moot.

## IV.  Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that Appellee's Motion to Dismiss Appeal [docket entry no. 36] is hereby granted. This appeal of the March 10, 2005, Order of the bankruptcy court is hereby dismissed.

IT IS FURTHER ORDERED that Appellant's Motion to Vacate Amended Judgment and Request for Remand or De Novo Review [docket entry no. 41] is hereby denied as moot.

SO ORDERED this the 1st day of June, 2006.


                                            s/ William H. Barbour, Jr.
                                            UNITED STATES DISTRICT JUDGE

blj